FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 27 2004

at ___ o'clock and ___ min. ___ M
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 03-00517 SOM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | DISMISS AND STRIKE SURPLUSAGE |
| | ) | |
| D.M. "DUSTY" GRUVER (01), | ) | |
| aka DUSTIN AYER MULDOON, and | ) | |
| JACKSON MULDOON (02), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER DENYING MOTION TO DISMISS AND STRIKE SURPLUSAGE

I.    INTRODUCTION.

On October 22, 2003, the Grand Jury indicted Defendants D.M. "Dusty" Gruver and Jackson Muldoon. This Indictment was superseded on December 17, 2003. Count 1 of the Superseding Indictment charges Gruver and Muldoon under 18 U.S.C. § 371 with conspiring to violate 18 U.S.C. § 545, the federal smuggling statute, and 16 U.S.C. §§ 3371-3378, the Lacey Act. Counts 2 to 11 charge specific smuggling and Lacey Act violations. All counts against Defendants arise from Defendants' allegedly illegal sales of protected wildlife and/or alleged agreement(s) to make such sales.

Gruver asks this court to dismiss Counts 2 to 5 and 7 to 11 of the Superseding Indictment. Gruver also asks this court to strike portions of the Superseding Indictment as surplusage. Because the Superseding Indictment properly alleges violations of the federal smuggling statute and the Lacey Act, Gruver's Motion

to Dismiss is denied.  Because the court cannot determine at this
time whether any particular statement in the Superseding
Indictment is surplusage, the court denies the Motion to Strike
Surplusage without prejudice.

II.    <u>MOTION TO DISMISS.</u>

Rule 12(b) of the Federal Rules of Criminal Procedure
allows the consideration at the pretrial stage of any defense
that "is capable of determination without the trial of the
general issue."  A motion to dismiss is generally "capable of
determination" before trial if it involves questions of law
rather than fact.  <u>United States v. Nukida</u>, 8 F.3d 665, 669,
<u>appeal after remand</u>, 87 F.3d 1324 (9th Cir. 1993).

Gruver argues that, under Rule 12(b)(3), there are
defects in the Superseding Indictment that warrant dismissal of
Counts 2 to 5 and 7 to 11.

A.    The Superseding Indictment Properly Alleges
       <u>Violations of 18 U.S.C. § 545.</u>

Counts 2 to 9 of the Superseding Indictment charge the
Defendants with violations of the federal smuggling statute, 18
U.S.C. § 545:[1]

_____

[1]Section 545 states:

Whoever knowingly and willfully, with intent
to defraud the United States, smuggles, or
clandestinely introduces or attempts to
smuggle or clandestinely introduce into the
United States any merchandise which should
have been invoiced, or makes out or passes,

COUNTS 2-9

The Grand Jury further charges:

13.    Paragraphs 1-9 are repeated and re-
alleged as though set forth in full here.

14. On or about the dates listed below,
within the District of Hawaii and elsewhere,

_____

or attempts to pass, through the customhouse
any false, forged, or fraudulent invoice, or
other document or paper; or

Whoever fraudulently or knowingly imports or
brings into the United States, any
merchandise contrary to law, or receives,
conceals, buys, sells, or in any manner
facilitates the transportation, concealment,
or sale of such merchandise after
importation, knowing the same to have been
imported or brought into the United States
contrary to law--

Shall be fined under this title or imprisoned
not more than five years, or both.

Proof of defendant's possession of such
goods, unless explained to the satisfaction
of the jury, shall be deemed evidence
sufficient to authorize conviction for
violation of this section.

Merchandise introduced into the United States
in violation of this section, or the value
thereof, to be recovered from any person
described in the first or second paragraph of
this section, shall be forfeited to the
United States.

The term "United States", as used in this
section, shall not include the Virgin
Islands, American Samoa, Wake Island, Midway
Islands, Kingman Reef, Johnston Island, or
Guam.

18 U.S.C. § 545.

the Defendants D.M. "DUSTY" GRUVER and
JACKSON MULDOON did knowingly import and
bring into the United States merchandise, to
wit, wildlife, including the following:
Orangutan, Helmuted hornbill (hornbill),
leopard, Asiatic black bear, and sun bear
contrary to law, and did knowingly sell such
merchandise after importation, knowing the
wildlife to have been imported and brought
into the United States contrary to law, that
is, contrary to the Endangered Species Act,
Title 16 United States Code, Sections
1538(a)(1)(A), and CITES, 1538(c)(1), and
Title 50, Code of Federal Regulations,
Sections 14.52 and 14.61:

| COUNT | DATE |
|-------|------|
| 2 | October 29, 1998 |
| 3 | April 6, 1999 |
| 4 | September 4, 1999 |
| 5 | October 31, 1999 |
| 6 | November 26, 1999 |
| 7 | December 18, 1999 |
| 8 | February 15, 2000 |
| 9 | March 19, 2000 |

Superseding Indictment at 16-17.

The detail for Counts 2 to 9 generally can be found in

the "Overt Acts" section of the conspiracy charged in Count 1 of

the Superseding Indictment, although the overt acts were not

incorporated by reference into Counts 2 to 9.  Count 2 pertains

to the allegation that "GRUVER sold one hornbill casque for

$1,000.00 and the item was shipped to Maryland from Hawaii."  Id.

¶ 12(d).  Count 3 pertains to the allegation that "GRUVER sold

two orangutan skulls, one sun bear skull, and other items for

$3,300.00 and mailed the items USPS certified mail to Montana

from Hawaii."  Id. ¶ 12(f).  Count 4 pertains to the allegation

4

that "GRUVER sold a Sun bear skull for $227.50 and mailed it by USPS certified mail to Ohio from Hawaii." Id. ¶ 12(l). Count 5 pertains to the allegation that "GRUVER sold two orangutan skulls and one human cranial bowl for $2,222.50. The items were mailed by USPS certified mail to Montana from Hawaii." Id. ¶ 12(r). Count 6 pertains to either the allegation that "GRUVER sent hornbill ear weights to Defendant MULDOON in Oregon" or that "Defendant sold one hornbill ear weight for $300.00 and mailed it by USPS insured mail to Switzerland from Hawaii." Id. ¶ 12(u) and (v).[2] Count 7 pertains to the allegation that "GRUVER sold a hornbill ivory ear weight to a Special Agent via the online auction E-Bay for $528.00 and mailed it by USPS certified mail to Illinois." Id. ¶ 12(y). Count 8 pertains to the allegation that "Defendant sold another hornbill ivory ear weight for $350.00 to a Special Agent and mailed it USPS certified mail to Illinois." Id. ¶ 12(z). Count 9 pertains to the allegation that "GRUVER sold one hornbill ivory ear weight to a Special Agent and mailed it USPS certified mail to Illinois." Id. ¶ 12(aa).

Gruver argues that Counts 2 to 5 and 7 to 9 do not sufficiently state violations of § 545 because the detail in the "Overt Acts" section indicates that Defendants are being charged

---

[2]For purposes of Counts 6 and 8, the Government represented at the initial hearing that only Gruver, not Muldoon, is alleged to have actually sold wildlife. The present motions do not seek relief with respect to Count 6.

with the sale of protected wildlife, not the importation of that wildlife. Gruver argues that the Lacey Act can only be violated through importation of protected wildlife. <u>See</u> Memorandum in Support of Motion at 19. The court disagrees.

An indictment is required only to "be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment will withstand a motion to dismiss if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his or her defense; (2) to ensure the defendant that he or she is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable the defendant to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge. <u>United States v. Rosi</u>, 27 F.3d 409, 414 (9th Cir. 1994); <u>United States v. Bernhardt</u>, 840 F.2d 1441, 1445 (9th Cir. 1988). <u>Accord</u> <u>United States v. Woodruff</u>, 50 F.3d 673, 676 (9th Cir. 1995) (stating that, generally, an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged). An indictment that tracks the offense in the words of the statute generally is sufficient if those words fully, directly, and expressly set forth all the elements necessary to constitute the

offense intended to be proved.  United States v. Tavelman, 650 F.2d 1133, 1137 (9th Cir. 1981).

Notwithstanding Gruver's argument to the contrary, § 545 prohibits more than international importation and exportation of merchandise such as protected wildlife or wildlife parts.  Section 545 is violated when someone "receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law."  18 U.S.C. § 545.  Accordingly, a § 545 violation may be properly alleged by an indictment that states that a defendant received, concealed, bought, sold, or in any manner facilitated the transportation, concealment, or sale of merchandise that the defendant knew had been was already imported into the United States contrary to law.  See also United States v. Molt, 615 F.2d 141, 144 (3d Cir. 1980) ("To prove a section 545 offense the government must prove beyond a reasonable doubt that the defendant: 1) received, concealed, bought, sold, or facilitated the transportation, concealment, or sale; 2) of merchandise after importation; 3) knowing the same to have been imported contrary to law.") (discussing an earlier version of § 545 that, in pertinent part, was identical to the present version).

For purposes of Counts 2 to 9, the Superseding Indictment alleges that Gruver and Muldoon knowingly imported various protected wildlife and/or wildlife parts "contrary to the Endangered Species Act, Title 16 United States Code, Sections 1538(a)(1)(A), and CITES, 1538(c)(1), and Title 50, Code of Federal Regulations, Sections 14.52 and 14.61." Superseding Indictment ¶ 14. The Superseding Indictment then alleges that, on or about certain dates, Defendants sold that protected wildlife and/or wildlife parts, knowing that the items had been imported contrary to law. These allegations relevant to Counts 2 to 9 are sufficient to charge violations of § 545.[3]

B.    Counts 2 and 10 Are Timely.

Gruver argues that Counts 2 and 10 of the Superseding Indictment should be dismissed because they were not filed within the applicable five-year statute of limitation. Memorandum in Support of Motion at 21 (citing 18 U.S.C. § 3282).[4] Count 2

---

[3]At the initial hearing, Gruver took the position that Counts 2 to 9 are defective in charging Defendants with both importation of wildlife and sale of such wildlife after importation. See Superseding Indictment ¶ 14. Gruver argued that the Superseding Indictment is faulty because two possible crimes are charged in the one count. This argument, however, has been foreclosed by United States v. Fulbright, 105 F.3d 443, 449 (9th Cir. 1997) ("Where a statute enumerates several means of committing an offense, an indictment may contain several allegations in the conjunctive.") (approving of an indictment that charged three different means of violating 18 U.S.C. § 1503 in a single count of an indictment).

[4]The Government does dispute the applicability of a five-year limitation period to Counts 2 or 10.

alleges a federal smuggling violation predicated on an act that
occurred on or about October 29, 1998.  Count 10 alleges a Lacey
Act violation predicated on an act that occurred on or about
October 24, 1998.  Because the Superseding Indictment was filed
on December 17, 2003, Gruver contends that the five-year
limitation period has run, and Counts 2 and 10 must be dismissed.

　　　　The Government argues that Gruver's limitation argument
is unpersuasive because similar counts were alleged in the
original indictment filed on October 22, 2003, within the five-
year limitation period.[5]  The Government argues that the
limitation period was therefore tolled by the original
Indictment.

　　　　The Ninth Circuit has held:

> Generally speaking, the return of an
> indictment tolls the statute of limitations
> with respect to the charges contained in the
> indictment.  If a superseding indictment on
> the same charges is returned while a previous
> indictment is still pending, the tolling
> continues.  An original indictment remains
> pending until it is dismissed or until double
> jeopardy or due process would forbid
> prosecution under it.
>
> 　　. . . [I]f the counts in the superseding
> indictment "broaden[ed] or substantially
> amend[ed]" the charges in the original

---

[5]Whether the statute of limitation was violated when
the Superseding Indictment added Muldoon as a Defendant to
Counts 2 and 10 after the statute of limitation had run is not at
issue on this motion.  Muldoon filed only a joinder of simple
agreement, not a substantive joinder.  See Local Rule 7.9.  Thus,
Muldoon has not raised this separate issue.

indictment, the statute of limitations would
not have been tolled as to those charges.
However, where the counts of an original
indictment are simply duplicated verbatim
into a superseding indictment, the statute of
limitations on those counts is tolled, even
if additional counts that are subject to no
limitations objection are added. This is
because when charges from an original
indictment are duplicated in a superseding
indictment the defendant cannot claim he
lacked notice of those charges.

Notice to the defendant is the central
policy underlying the statutes of limitation.
If the allegations and charges are
substantially the same in the old and new
indictments, the assumption is that the
defendant has been placed on notice of the
charges against him. That is, he knows that
he will be called to account for certain
activities and should prepare a defense.

United States v. Pacheco, 912 F.2d 297, 305 (9th Cir. 1990)

(citations omitted).

Gruver attempts to distinguish Pacheco by arguing that,

because Counts 2 and 10 were insufficiently pled, no indictment

for the crimes alleged therein ever existed for purposes of the

limitation period.[6]  Under United States v. Crysopt Corp., 781 F.

_____

[6]None of the cases Gruver relies on in this regard
involves a Lacey Act charge.  However, the Government conceded
that, in light of Olais-Castro v. United States, 416 F.2d 1155,
1158 n.8 (9th Cir. 1969), Count 2 of the original Indictment
insufficiently pled a violation of the Federal Smuggling Statute,
as it did not identify which law, treaty, or regulation allegedly
was violated.  See Government's Supplemental Memorandum Regarding
Dismissal Issues (April 19, 2004) at 4 ("The government concedes
that Counts 2 and 10 of the original Indictment failed to
adequately state an offense.").  The Government also appears to
have conceded that Count 10 required identification of the exact
law, treaty, or regulation allegedly violated.  Id.  The Ninth

Supp. 375 (D. Md. 1991), Gruver argues that Counts 2 and 10 were never "validly pending" against him. Gruver argues that, because he was never actually charged with the violations alleged in Counts 2 and 10, the limitation period was never tolled.

The court recognizes that Crysopt held that a "defective indictment confers no jurisdiction whatsoever upon the trial court." Id. at 377. Crysopt also stated that "a defective original indictment is simply a nullity." Id. at 377-78. However, Crysopt is at odds with the law in the Ninth Circuit. The Ninth Circuit has held that an original indictment remains pending until it is dismissed, not that an insufficient indictment is automatically a legal nullity even before dismissal. See Pacheco, 912 F.2d at 305. The Ninth Circuit is not alone in so holding. See, e.g., United States v. Smith, 197

---

Circuit affirmed a Lacey Act conviction in a case in which the indictment merely alleged that the defendant "knowingly engage[d] in conduct involving an intent to sell wildlife with a market value in excess of $350, . . . by transporting said wildlife knowing it was taken in violation of United States law or regulation." See United States v. Senchenko, 133 F.3d 1153, 1155 (9th Cir. 1998). However, it does not appear that the issue of specific identification of the predicate law was before the Ninth Circuit in that case. United States v. LeVeque, 283 F.3d 1098 (9th Cir. 2002), cited by Gruver, is not on point on that issue. Although LeVeque noted that a felony conviction under § 3373(d)(1) requires "actual knowledge that the game was taken in violation of state law," it does not state that the indictment must expressly identify that law. Id. at 1106. In any event, this court need not decide whether, as alleged in the original Indictment, Counts 2 and 10 were defective given their failure to specifically identify the laws on which they were predicated. Even if they were defective, they acted, as noted below, to toll the limitation period.

F.3d 225, 228-29 (6th Cir. 1999) (rejecting <u>Crysopt</u> and reasoning

that whether an indictment is "validly pending" is "unrelated to

the issue of whether an indictment is defective or

insufficient.").

Moreover, Gruver's argument is inconsistent 18 U.S.C.

§ 3288, which allows the Government to supersede a dismissed

indictment without any statute of limitation problem:

> Whenever an indictment or information
> charging a felony is dismissed for any reason
> after the period prescribed by the applicable
> statute of limitations has expired, a new
> indictment may be returned in the appropriate
> jurisdiction within six calendar months of
> the date of the dismissal of the indictment
> or information, or, in the event of an
> appeal, within 60 days of the date the
> dismissal of the indictment or information
> becomes final, or, if no regular grand jury
> is in session in the appropriate jurisdiction
> when the indictment or information is
> dismissed, within six calendar months of the
> date when the next regular grand jury is
> convened, which new indictment shall not be
> barred by any statute of limitations.  This
> section does not permit the filing of a new
> indictment or information where the reason
> for the dismissal was the failure to file the
> indictment or information within the period
> prescribed by the applicable statute of
> limitations, or some other reason that would
> bar a new prosecution.

18 U.S.C. § 3288.  Given § 3288, it is unlikely that the Ninth

Circuit would conclude that an insufficient indictment does not

toll the limitation period.  To hold otherwise would make a

nullity of the limitation period, as § 3288 would then allow the

Government to resurrect a charge outside of the limitation period

by merely dismissing the defective indictment. This would put
form over substance and would be particularly nonsensical when,
as here, Defendants had notice of the acts that are alleged to
have been illegal.

Based on the foregoing discussion, the court concludes
that the original Indictment, even if deficient, tolled the
statute of limitation. In reaching this conclusion, the court is
particularly influenced by United States v. Wilsey, 458 F.2d 11
(9th Cir. 1972). In Wilsey, the defendant argued that, when the
Government voluntarily supersedes an indictment (rather than
having it dismissed), the tolling of the statute of limitations
under § 3288 does not apply. Although the Ninth Circuit agreed
that § 3288 did not apply when an indictment was not dismissed,
it nevertheless found no statute of limitation violation,
reasoning that the "filing of an indictment results in a tolling
of the statute . . . . That tolling continues until the
indictment is dismissed. Here the superseding indictments were
brought while the statute still effectively was tolled and
accordingly were timely brought." Id. at 12.

Although the superseding indictment in Wilsey only
corrected a date and "amplified" "certain statutory language,"
the court is unpersuaded by Gruver's attempt to distinguish it.
Gruver assumes that, in the Ninth Circuit, there is no charge
against a defendant unless the indictment is valid. However,

13

both Wilsey and Pacheco noted that the limitation period is tolled until an indictment is dismissed, not that a defective indictment is a nullity.  Gruver's argument would make a nullity of the statements in Wilsey and Pacheco.  Under Pacheco and Wilsey, the filing of the original Indictment, given the circumstances of this case, tolled the statute of limitations. Accordingly, Counts 2 and 10 were timely asserted in the Superseding Indictment.

C.   Count 11 Properly Alleges a Lacey Act Violation.

Count 11 alleges a violation of the Lacey Act, which makes it a federal offense "to import, export, transport, sell, receive, acquire, or purchase . . . any wildlife . . . possessed, transported, or sold in violation of any law, treaty, or regulation of the United States . . . ."  16 U.S.C. § 3372(a)(1). Section 3373(d)(1)(B) states that any person who

> violates any provision of this chapter . . .
> by knowingly engaging in conduct that
> involves the sale or purchase of, the offer
> of sale or purchase of, or the intent to sell
> or purchase, . . . wildlife . . . with a
> market value in excess of $350, knowing that
> the . . . wildlife . . . [was] taken,
> possessed, transported, or sold in violation
> of, or in a manner unlawful under any
> underlying law, treaty or regulation, shall
> be fined not more than $20,000, or imprisoned
> for not more than five years, or both.

16 U.S.C. § 3373(d)(1)(B).

Gruver argues that Count 11 should be dismissed because it provides insufficient notice to him of alleged conduct

14

violating the Lacey Act.  Count 11 alleges that, on or about June

20, 1999, Defendants knowingly engaged

> in conduct involving the sale and purchase of
> wildlife, that is, Helmuted hornbill ear
> weights, with a market value in excess of
> $350, knowing said wildlife was possessed,
> transported, and sold in violation of . . .
> the Endangered Species Act, Title 16, United
> States Code, Sections 1538(a)(1)(A), (E),
> (F), and (G) and CITES, 1538(c)(1).

Superseding Indictment ¶ 16.

Gruver assumes that Count 11 is based on the conduct

pertaining to the email described in paragraph 12(i) of the

Superseding Indictment.  That email, allegedly sent on June 20,

1999, stated:

> the reason that I need that liquid smoke is
> that I engage in let's say, ahhhhhhh, certain
> restorative techniques on numbers of tribal
> objects that I bring into the country.  This
> is not supposed to be done, but if an item is
> OK, but does not have much of a "patina" that
> everyone looks for and values, then I work on
> it until it does have a killer patina.
> Trouble is, the "secret materials and
> techniques" that I use often leave a, ummmmm,
> 'modern' sort of smell, you see.  And, often
> as not, that woodsmoke "TRIBAL"-"REALLY AND
> TRULY GENUINE PRIMITIVE" smell will make the
> sale, after the correct "look" has already
> captivated the collector . . . . and it is my
> opinion that LIQUID SMOKE (tm) will 'bring it
> all back' if you catch my drift . . . .

Superseding Indictment ¶ 12(i).

However, the Government represents in its Opposition

that Count 11 is not based on the email, but instead on an

alleged sale of a helmuted hornbill ear weight for $350 on that

15

date.  As the sale is clearly referred to in the charging

paragraph, (i.e., paragraph 16 of the Superseding Indictment),

Count 11 sufficiently states and puts Gruver on notice of a Lacey

Act violation.

III.     MOTION TO STRIKE SURPLUSAGE.

Gruver asks that certain allegations of the Superseding

Indictment be stricken as surplusage.[7]  Rule 7(d) of the Federal

Rules of Criminal Procedure provides that surplusage may be

stricken as "a means of protecting the defendant against

immaterial or irrelevant allegations in an indictment or

information, which may, however, be prejudicial."  Fed. R. Crim.

P. 7(d), cmts; accord United States v. Ramirez, 710 F.2d 535,

544-45 (9th Cir. 1983) ("The purpose of Rule 7(d) is to protect a

defendant against prejudicial or inflammatory allegations that

are neither relevant nor material to the charges.").

A Rule 7(d) "motion is addressed to the discretion of

the court."  1 Charles Alan Wright, Federal Practice & Procedure

§ 127 (3d ed. 1999) (hereafter "1 Wright"); accord United States

v. Collins, 920 F.2d 619, 631 (10th Cir. 1990).  It should not be

granted unless "it is clear that the allegations are not relevant

to the charge and are inflammatory and prejudicial."  1 Wright

--------------------------------------------------

[7]Additionally, in light of certain statements made by
the Government at the initial hearing, Gruver seeks to have the
court strike Paragraph 14's reference to the knowing importation
of wildlife into the United States.  See Gruver's Supplemental
Memorandum in Support of Pretrial Motions (April 14, 2004).

§ 127; <u>see also</u> <u>Collins</u>, 920 F.2d at 631; 9 <u>Federal Procedure,</u>
<u>Lawyers Edition</u> § 22:819 (1993). It is an "exacting standard,
and only rarely has surplusage been ordered stricken." 1 Wright
§ 127; <u>accord</u> <u>United States v. Huppert</u>, 917 F.2d 507, 511 (11th
Cir. 1990) (<u>citing</u> <u>United States v. Bullock</u>, 451 F.2d 884, 888
(5th Cir. 1971)) (<u>superseded on other grounds by statute as</u>
<u>stated in</u> <u>United States v. McQueen</u>, 86 F.3d 180, 183 (11th Cir.
1996)).

        "Words that are employed in an indictment that are
descriptive of that which is legally essential to the charge in
the indictment cannot be stricken out as surplusage." <u>United</u>
<u>States v. Root</u>, 366 F.2d 377, 381 (9th Cir. 1966). "[I]f evidence
of the allegation is admissible and relevant to the charge, then
regardless of how prejudicial the language is, it may not be
stricken." <u>Federal Procedure</u> § 22:819.

        Courts may reserve ruling on motions to strike
surplusage until they have heard evidence that will establish
whether the alleged surplusage is relevant. <u>See</u> <u>United States v.</u>
<u>Awan</u>, 966 F.2d 1415, 1426 (11th Cir. 1992); 1 Wright § 127.

        The Ninth Circuit has noted that other circuits have
applied Rule 7(d) to strike surplusage in several circumstances.
For instance, an alias was stricken from an indictment when the
alias was not relevant to the issue of the defendant's
identification. Similarly, "prejudicial language describing the

17

nature of a prior felony charge (carrying a handgun)" was
stricken from an indictment charging possession of a handgun by a
previously convicted felon. See Ramirez, 710 F.2d at 545 (citing
United States v. Poore, 594 F.2d 39 (4th Cir. 1979), and United
States v. Wilkerson, 456 F.2d 57 (6th Cir. 1972)).

          The Ninth Circuit has affirmed the denial of Rule 7(d)
motions on several occasions.  For example, in Ramirez, the Ninth
Circuit affirmed a district court's refusal to strike from an
indictment the words "a true bill" and the names and signatures
of the United States attorney and the grand jury foreperson.
Ramirez, 710 F.2d at 545.  The defendant in Ramirez had argued
that this language prejudiced him by telling the jury that a
"higher jury" and the United States Attorney had found the facts
to be true.  Id.  The Ninth Circuit characterized this argument
as "frivolous," holding that the trial court had properly
instructed the jury that the indictment was not evidence.  Id.

          Similarly, in United States v. Terrigno, 838 F.2d 371
(9th Cir. 1988), the Ninth Circuit held that the district court
did not abuse its discretion in denying a motion to strike
surplusage.  There, the defendant objected

               to the inclusion of four allegations in the
               indictment: (1) the repeated statement that
               the embezzled funds were destined for the
               "poor and homeless"; (2) the reiteration that
               she issued checks "willfully"; (3) the
               assertion that she prepared a list for the
               United Way of indigents to whom she
               purportedly distributed the Safeway gift

> certificates in an effort to "lull and
> deceive" the United Way; and (4) the
> description of "Macho" as a men's clothing
> store.

Terrigno, 838 F.2d at 383.  The Ninth Circuit noted that these

statements were all "relevant and material to the charge of

embezzlement because the Government had to prove that Terrigno

had an intent to convert money belonging to an agency of the

United States."  Id.

Clearly, this court must examine whether the various

allegations are relevant and material to this action.  The

problem is, however, that until the evidence is actually

introduced, the court cannot determine the relevance of the

statements in an indictment.  At this time, the court denies

Defendants' request to strike portions of the Superseding

Indictment.

In denying Defendants' motion, the court notes that it

will not be reading the entire Superseding Indictment to the jury

at the start of trial.  Instead, the court at that time will read

to the jury only the charging portions of that document.  The

parties are ordered to meet and confer before trial in an attempt

to provide this court with a redacted version of the Superseding

Indictment to be read to the jury at the start of trial.

The Government will not be allowed to read the entire

Superseding Indictment to the jury during opening statement, but

instead will be confined to reading the sections read by the

court.  This will eliminate any possible prejudice to Defendants at this stage of any alleged surplusage in the Superseding Indictment.[8]  After the evidence has closed, Defendants may move again to strike portions of the Superseding Indictment from the form of the document that may be given to the jury for its reference during deliberations.  Before so moving, however, Defendants must meet and confer with the Government to see whether the parties can agree about the inclusion or exclusion of any contested language in the Superseding Indictment.

IV.       CONCLUSION.

          For the foregoing reasons, the motion to dismiss and to strike surplusage is denied.


                    IT IS SO ORDERED.


                    DATED: Honolulu, Hawaii, April 27, 2004.


                                        SUSAN OKI MOLLWAY
                                        UNITED STATES DISTRICT JUDGE

---

          [8]This order does not, of course, preclude the Government from outlining the evidence that will be offered, even if that evidence is summarized in noncharging sections of the Superseding Indictment.

United States of American v. Gruver, et al., Crim. No. 03-00517 SOM; ORDER DENYING MOTION TO DISMISS AND STRIKE SURPLUSAGE.