FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 27 2004

at __ o'clock and __ min. __M
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 03-00517 SOM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | SUPPRESS |
| | ) | |
| D.M. "DUSTY" GRUVER (01), | ) | |
| aka DUSTIN AYER MULDOON, and | ) | |
| JACKSON MULDOON (02), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER DENYING MOTION TO SUPPRESS

I.      INTRODUCTION.

This case arises out of alleged violations of 18 U.S.C. § 545, the federal smuggling statute, and 16 U.S.C. §§ 3371-3378, the Lacey Act. Defendant D.M. "Dusty" Gruver seeks suppression of certain evidence seized pursuant to a search warrant.

II.     FACTUAL BACKGROUND.

On February 20, 2002, Magistrate Judge Barry M. Kurren signed a Search Warrant for Gruver's home, 4021 Pakahi Place. This warrant athorized the seizure of the following:

> 1. Abelam woven adornment which was fashioned from a hornbill skull.
>
> 2. Ilongot Ceremonial Headdress which was fashioned from a hornbill skull.
>
> 3. Other items containing wildlife parts or products protected under the Convention of International Trade in Endangered Species ("CITES").
>
> 4. Records relating to the purchase, sale, import, export, storage, shipping, and

handling of wildlife items protected under CITES, including, but not limited to, the following:

   a. supplier lists, customer lists, price lists, inventory lists, address books, letters, Rolodex files, notes, business cards, telephone records, facsimiles, or other documents relating to commercial activities involving such items;

   b. advertisements and correspondence and communications with others, such as suppliers, customers, competitors; organization, and government agencies concerned with such items.

   c. import and export documents;

   d. government permits and licenses, including CITES permits and applications for CITES permits;

   e. invoices, sales receipts, purchase orders, general ledgers, packing slips, financial and bank records, wire transfers, cancelled checks, transportation documents, and airway bills.

5. Items of personal property that tend to identify the person(s) in control, possession, and ownership of the premises to be searched and the items contained therein, including but not limited to cancelled mail, photographs, personal telephone books, diaries, bills and statements, keys, identification cards and documents, airline tickets and related travel documents, bank books, checks and check registers.

6. Computers, computer systems, electronic data processing, and storage devices (including central processing units, internal and peripheral storage devices such as computer hard drives, CD ROM disks, diskettes, tapes, or any other media capable of storing information in an electronic form or in a form readable by a computer), which

>contain or may contain any of the
>information, records, or items described
>above. All related hardware, operating logs,
>software, and instructions or operating
>manuals, computer materials, software, and
>programs used to decode, translate or
>communicate with other terminals via
>telephone or other means, physical keys,
>encryption devices, passwords, password
>files, test keys, encryption codes, any
>computer modems, monitors and printers, and
>all other materials needed to operate the
>electronic data processing and storage
>devices, computers, and computer systems
>seized, or gain access to or make readable
>the data and other information stored in such
>computers and data storage devices.

Search Warrant (February 20, 2002).

The search warrant was based on a 19-page affidavit by Special Agent Edward Grace, an employee of the United States Fish and Wildlife Service ("USFWS") for approximately five and a half years. Affidavit of Special Agent Edward Grace ¶ 1 (February 20, 2002). Grace indicated that he had previously been employed for two years by the Florida Game and Fresh Water Fish Commission as a wildlife officer. He said that he had a Masters of Science degree and a Bachelor of Science degree, both in biology. He indicated that he had "received extensive training on wildlife identification" through his academic courses and The United States Fish and Wildlife Service Special Agent Basic School. Id. Grace indicated that he had been involved in about 50 investigations dealing with protected wildlife products and parts. Id. ¶ 4.

Unless otherwise indicated, Grace's affidavit set forth the following facts. Grace had been investigating Gruver, who operated Tribal Artifacts, a business, out of Gruver's residence. Id. ¶ 2. Tribal Artifacts maintained a web page, www.tribalartifacts.com. Id. ¶ 10. According to this webpage, Tribal Artifacts offered "a broad spectrum of high quality, unique articles from the many cultures of southeast Asia" and was operated "out of our home overlooking Honolulu, Hawaii." Id. Hawaii's Department of Commerce and Consumer Affairs records indicate that Tribal Artifacts was a trade name registered to Denis M. Gruver with an address of P.O. Box 15101, Honolulu, Hawaii, 96830. Id. ¶ 11. The State of Hawaii's driver's license records indicate that there was a Hawaii driver's license issued to Denis McNamara Gruver, whose mailing address was P.O. Box 15101, Honolulu, Hawaii 96830, and whose home address was 4021 Pakahi, Honolulu, Hawaii 96816. Grace says that the only street in Hawaii with the name "Pakahi" is Pakahi Place. Id. ¶ 12.

A USFWS import/export license application by D.M. Dusty Gruver lists an address of P.O. Box 15101, Honolulu, Hawaii, and says that items were to be kept at "4021 Pakahi Place 96816." Id. ¶ 13.

Other evidence indicated that Gruver lived at 4021 Pakahi Place. For instance, Gruver's jeep was seen in the carport there. Id. ¶ 31. Also, a "Jennifer Gruver" had

discussed with the police an identity theft issue at that address on February 12, 2002. Id. ¶¶ 32-33.

In 1999, USFWS Inspector Mike Merida saw pictures of hornbill ivory ear weights and a hornbill necklace for sale on the Tribal Artifacts website. Id. ¶ 14. Hornbills, like tigers, elephants, and all primates, are endangered species protected under various laws and treaties. Id. ¶ 4. Special international permits are required for trade in such wildlife. Id. Neither Gruver nor Tribal Artifacts had such a permit. Id. ¶ 9.

Beginning in December 1999, Government agents, using the name "Robert Quaid," purchased several artifacts from Tribal Artifacts made from endangered species. Id. ¶¶ 15-19. On May 3, 2000, the Government initiated a civil proceeding against Dusty Gruver for illegally importing wildlife products, including two tiger teeth, four hornbill casques, one primate skull, three hornbill skulls, and one rhinoceros penis whip. This civil proceeding was settled in August 2001, with Gruver paying a $500 penalty and forfeiting all wildlife products from three shipments. Id. ¶ 20.

On October 5, 2001, after the settlement in the civil proceeding, Grace contacted Gruver by email using the name "Robert Quaid." Grace asked Gruver whether an Abelam woven adornment advertised on Gruver's website was still for sale. Gruver replied by email, including several pictures of the piece.

5

Grace said that, based on his training and experience, he thought the piece was made from a hornbill. In a subsequent email on October 9, 2001, Gruver told Quaid about the trouble Gruver had gotten into for "illegal importation of hornbill ivory." Gruver told Quaid that the USFWS has said that "trafficking in endangered species products is considered only slightly less important than gun and drugs smuggling." Id. ¶ 22.

On October 20, 2001, Grace, again using the name "Robert Quaid," contacted Gruver by email. Grace said that he was torn between the Abelam woven adornment and the Ilongot ceremonial headdress and asked for more pictures of the headdress. Grace, as Robert Quaid, asked Gruver not to tell the USFWS that Gruver had already sold hornbill items to Robert Quaid. Gruver responded by email that Quaid was "properly paranoid" about the hornbill ivory.

Grace said that he then purchased a rhinoceros bowl and a hornbill earring for $900, sending a money order via certified mail to Tribal Artifacts at P.O. Box 15101, Honolulu, Hawaii 96830. Id. ¶ 25. Grace received a package delivered by the United States Postal Service on October 20, 2001. Inside the package were the rhinoceros bowl and hornbill earrings. The package had a return address indicating that it was sent by Tribal Artifacts, P.O. Box 15101, Honolulu, Hawaii 96830. Grace

6

subsequently received the certified mail receipt for the money order. The receipt was signed by Dusty Gruver. Id. ¶ 26.

Gruver sent an email to Quaid that described the Ilongot ceremonial headdress and the problems Gruver had importing it. Based on Grace's training and experience, Grace thought the headdress was made from the skull of a hornbill. Id. ¶ 25.

In an email dated December 3, 2001, Gruver told Quaid that he had purchased the Abelam piece in Australia and that he had had a lot of trouble getting it into the United States: "Finally, after almost two years had passed, the piece arrived here . . . . [after] many convolutions to its journey and a very circuitous route to my door! . . . I keep it out of view, in my safe, at this time." Id. ¶ 27.

As of February 10, 2002, the Tribal Artifacts webpage indicated that the Abelam woven adornment and Ilongot ceremonial headdress were still for sale by Tribal Artifacts. Id. ¶ 29.

Based on the above conduct, Grace thought the Abelam woven adornment, the Ilongot ceremonial headdress, and other protected items containing wildlife parts or products were at 4021 Pakahi Place. Id. ¶ 35.

Based on his training and experience, Grace indicated that "people engaged in the commercial importation and sale of . . . protected wildlife often keep in their residence, or in the

7

premises used in connection with such commercial activity, records, documents and evidence relating to their trade in . . . protected wildlife," including the various documents listed in the Search Warrant. Id. ¶ 36.

The Property Receipt for items seized pursuant to the Search Warrant lists 53 items, some described with a little detail, such as "Mask w/ feathers, hair & hat," others described generally, such as "office files" or "documents."

III.   MOTION TO SUPPRESS.

Gruver moves to suppress the items seized from his house, and asks that the Government return those items to him.

A.   No Particularity.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (emphasis added). Gruver argues that the Search Warrant violated the Fourth Amendment's particularity requirement by not adequately describing the items to the seized.

The Supreme Court has noted that compliance with the particularity requirement must be found in the warrant itself, not in supporting documents such as the application. Groh v. Ramirez, 124 S. Ct. 1284, 1289 (2004). However, the warrant may incorporate detail from documents accompanying the warrant. Id.

8

at 1290. In Groh, the Supreme Court found that a warrant violated the particularity requirement when, although supported by a detailed affidavit about illegal weapons, the warrant itself mistakenly stated that the premises, rather than the weapons, were to be seized. Id. at 1288-90. In concluding that the seizure of the weapons was unreasonable and violated the Fourth Amendment, the Supreme Court said that the particularity requirement for warrants prevents general searches and notifies the individual whose property is being searched or seized of the executing officer's lawful authority to conduct the search and of the limits of the officer's power to search. Id. at 1292. In other words, the particularity requirement "prevents general, exploratory searches and indiscriminate rummaging through a person's belongings . . . and ensures that the magistrate issuing the warrant is fully apprised of the scope of the search and can thus accurately determine whether the entire search is supported by probable cause." United States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986).

"As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Marron v. United States, 275 U.S. 192, 196 (1927). "If items that are illegal, fraudulent, or evidence of illegality are sought, the warrant must contain some guidelines to aid the determination of

what may or may not be seized." United States v. Cardwell, 680 F.2d 75, 78 (9th Cir. 1982).

The Ninth Circuit requires a warrant's description to "be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." Spilotro, 800 F.2d at 963. The Ninth Circuit has recognized that the specificity required depends on the circumstances of the case and the type of items involved. Id. For example, generic descriptions are acceptable when a more precise description of the items to be seized is not possible. Id.; accord Kow v. United States, 58 F.3d 423, 427 (9th Cir. 1995).

In examining whether a warrant satisfies the particularity requirement, the Ninth Circuit has

> concentrated on one of more of the following: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

Spilotro, 800 F.2d at 963 (citations omitted).

Gruver argues that the Search Warrant in this case did not satisfy any of the three Spilotro factors. Gruver admits that the Government had probable cause to believe that the Abelam and Ilongot items were on the premises. However, he argues that

the Government lacked probable cause to believe that any other items were on the premises and contends that the search warrant should have been limited to evidence pertaining to the Abelam and Ilongot items.

Gruver first argues that there was no probable cause to believe that other items made of protected wildlife that had been illegally imported into the country were in his residence. The court disagrees. Gruver had a history of illegally importing items for sale made of endangered species. In fact, in August 2001, Gruver had reached a civil settlement for illegally importing wildlife products, including two tiger teeth, four hornbill casques, one primate skull, three hornbill skulls, one rhinoceros penis whip.[1] Even after this settlement, Gruver

---

[1] Gruver argues that, because the settlement included the forfeiture of three shipments of imported animal products, the court cannot rely on this sale in finding probable cause to believe any items were in his home (as the items had already been confiscated). This argument is not persuasive, as Gruver continued to sell illegally imported items, demonstrating both a history of and a proclivity towards violating laws pertaining to the sale of illegally imported wildlife items.

For the same reason, the court finds unpersuasive Gruver's argument that, because the rhinoceros bowl and hornbill earring had already been sold and sent to Government agents, there was no probable cause to believe any other illegal items existed in his house. Gruver's argument is akin to an argument that, when a Government agent buys narcotics from a defendant at his house, there can be no reason to believe that there are other narcotics in the house because the agent must have bought all of the narcotics.

Nor is the court persuaded by Gruver's argument that the facts stated in the affidavit were stale. Although the

continued to sell illegally imported items through Tribal Artifacts, as evidenced by the sale of the rhinoceros bowl and hornbill earring in October 2001 and the advertisement of the Abelam and Ilongot items on the Tribal Artifacts website through at least February 10, 2002. Gruver had sent several emails to agents posing as a collector named "Robert Quaid." These emails described the circumspect route through which Gruver had the items sent to him. These emails also acknowledged that such importation is illegal. Based on these facts, Grace believed that the Abelam and Ilongot items, as well as other items containing protected wildlife parts, were stored in Gruver's home. The court concludes that the Government had probable cause to believe that the Abelam and Ilongot items, as well as other items containing protected wildlife parts, were stored in Gruver's home.

Gruver also claims that the Search Warrant's authorization to seize various documentary evidence was overbroad. In Kow, a warrant was found to have been overbroad because it authorized the seizure of virtually every document and computer file at a business. Kow reasoned that the "government could have made the warrant more particular" by specifying the

---

Government last purchased illegally imported items made from protected wildlife from Gruver in October 2001, Gruver clearly continued to advertise such items for sale on February 10, 2002, shortly before the warrant was issued on February 20, 2002.

12

"suspected criminal conduct." Kow, 58 F.3d at 426. The Ninth Circuit has also invalidated search warrants that provided for "the almost unrestricted seizure of items which are 'evidence of violations of federal criminal law' without describing the specific crimes suspected," Center Art Galleries-Hawaii, Inc. v. United States, 875 F.2d 747, 750 (9th Cir. 1989), overruled on other grounds, J.B. Manning Corp. v. United States, 86 F.3d 926, 927 (9th cir. 1996). The present case is distinguishable from those cases because the present Search Warrant limited the seizure of documentary evidence to "[r]ecords relating to the purchase, sale, import, export, storage, shipping, and handling of wildlife items protected under CITES," the Convention of International Trade in Endangered Species. Search Warrant, List of Items Authorized to be Searched For and Seized, ¶¶ 3-4. Here, the warrant sufficiently specified the criminal conduct.

Gruver also argues that the Search Warrant was overbroad because it allowed the Government virtually unfettered authority to seize electronic evidence, such as computers and computer disks. However, Gruver does not demonstrate how the warrant could have been more specific as to that electronic evidence. In fact, the Ninth Circuit has upheld a similar warrant with respect to computer equipment. In United States v. Hay, 231 F.3d 630 (9th Cir. 2000), the Ninth Circuit upheld a search warrant that authorized the seizure of an entire computer

13

system to look for 19 images of child pornography that could have been stored anywhere in that equipment. See Id. at 637. "[N]o more specific description of the computer equipment was possible." Id.

Finally, Gruver argues, without citation to any authority, that the Search Warrant was overbroad because it allowed officers to seize items tending to demonstrate who lived at the premises, "including but not limited to cancelled mail, photographs, personal telephone books, diaries, bills and statements, keys, identification cards and documents, airline tickets and related travel documents, bank books, checks and check registers." However, when pressed for the basis of the argument, Gruver said that he "agrees" that, if the remainder of the warrant is sufficient, this language would also be sufficient. See Gruver's Supplemental Memorandum in Support of Pretrial Motions (April 14, 2004) at 10-11.[2] As the remainder of

---

[2] In his supplemental memorandum, Gruver asserts for the first time that the Search Warrant violated Rule 41(c) of the Federal Rules of Criminal Procedure. Rule 41(c) allows warrants to be issued for "(1) evidence of a crime; (2) contraband, fruits of crime, or other items illegally possessed; [or] (3) property designed for use, intended for use, or used in committed a crime." Id. Gruver fails to demonstrate how Rule 41(c) was violated by any of the items listed in the Search Warrant. Even the fifth category listed in the Search Warrant ("Items of personal property that tend to identify the person(s) in control, possession, and ownership of the premises") is authorized as "evidence of a crime," as it demonstrates who had control of the allegedly illegal items.

14

the warrant is indeed sufficient, this overbreadth argument fails.

IV.   CONCLUSION.

For the foregoing reasons, the motion to suppress is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 27, 2004.

/s/ Susan Oki Mollway
SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

United States of American v. Gruver, et al., Crim. No. 03-00517 SOM; ORDER DENYING MOTION TO SUPPRESS.

15